Good morning, my name is Nancy Winkleman and I represent the appellant Babcock & Wilcox in this appeal. I'd like to reserve three minutes for rebuttal. You have a clock in front of you. Thank you. Whatever time is still on the clock when you sit down will be yours. Thank you. The resolution of this appeal turns on the level of deference that should be paid to the determination of a Joint Labor Management Committee's interpretation of a collective bargaining agreement. The policy committee was asked to decide the very same question that the district court was asked to decide. Now, reasonable minds can differ, but the key point here is that the court was not writing on a clean slate. The policy committee decided through its interpretative powers given to it under the agreement that the employer does not have to make the additional payment under the national agreement. I noticed in your brief that you hardly argue at all independent of the authority of the national committee to decide the matter. That is to say, I don't see much argument based upon the text of the agreement independent of the allocation of decision-making authority to this body. Judge Fletcher, that's correct. But our position is tied closely to the policy committee's authority, and let me explain why that is. There's three key points that I'd like to focus on this morning as to why the policy committee's determination should be given substantial deference. Before you do that, if I disagree with you as to the authority of the policy committee, do you are you throwing in your hand otherwise? No, I'm not, Your Honor. We think even apart from the policy committee's determination that the agreement can be read the way that we want it to be read, but we so Make much argument of that effect. We had some argument, but you're absolutely correct that most of the weight and what carries most of our argument is the policy committee. So let me try to convince you and persuade you why that's important. Number one, these are the three points that I'd like to get to this morning. First of all, the policy committee is the entity designated by the parties to be the sole interpreter of the agreement. Number two, that this court should defer to the policy committee's, to the party's choice of how to interpret the agreement, which is the policy committee rather than imposing its own interpretation upon the parties. And number three, that the fund is bound to the policy committee's determination of the meaning of the agreement just as surely as the parties are bound. Turning to the first point, the policy committee is the entity designated by the parties to be the sole interpreter of the agreement. That's not what Article 25 says, counsel. It says that the only intermediary or administrative body is the policy committee. Now, that's sort of strange language. That doesn't say any disputes over the meaning of this contract will be decided by the policy committee. So the kind of language that we would expect to find here, designating the policy committee as the final interpreter of this, is not found. It's sort of strange language. What does an intermediary or administrative body mean? This was a body that could adjudicate a grievances, right? This policy committee does have the authority in another section of the national agreement in Section 6 to adjudicate grievances. And this is not a grievance? But this is not, this was not, and that process is laid out, but this is not a grievance. So where is the authority for the policy committee to be the ultimate decider of the meaning of the contract? Well, this is a key point. And you're absolutely correct, Judge Bybee, that Article 25, the only intermediary or administrative body. So what do those words mean? That's a key issue. That's your question. In the record, there's an undisputed affidavit as to the meaning of those words from the secretary of the policy committee, Noel Bork. Well, so that's the policy committee sort of declaring its own authority. Is that the Marbury versus Madison of the, of this agreement? Is that what this is? It, I mean, we would, we would argue that just the plain language of the agreement, the only administrate, intermediary or administrative body, gives the policy committee this power. I mean, after all, this is an agreement, a national agreement among numerous employers and numerous, and the international union, and it would be impractical for them to resolve issues like this with so many people at the table. So they give the policy committee, which is a committee composed of equal numbers of labor and management, the authority. And, and Mr. Bork's affidavit, I mean, I, I appreciate the point, but his affidavit goes through in great detail the processes that the policy committee has to interpret the agreement. I understand they have lots of processes for doing this. They, they delegated it back to subcommittees and so forth. One of the reasons that I asked counsel is that the letter that comes from, from Mr. Bork as the, as the impartial secretary that finds that this, that, that the charge for the, the 25 cent an hour charge on the apprentice fund is a dual rate and therefore contrary to the spirit and intent of the national maintenance agreement. That also, I don't know what that means. Contrary to the spirit and intent. Does that, does that mean that it's not permitted? It's not, this is not, this doesn't sort of follow as an, as an adjudicatory order. I mean, it doesn't sound like an order that says it's unenforceable. This is contrary to section 25. This doesn't look like a legal opinion that would come from a, from a body that had been delegated to adjudicate disputes over the meaning of a contract. It sounds like it's advisory. The policy committee really wears two hats under this agreement. It does have the authority under the grievance process to adjudicate disputes in the way that your Honor's talking about. But it also has the power, as Bork says, to interpret the agreement. It's almost as if it's an administrative agency charged with interpreting a scheme. It certainly would in the context of a grievance. But you've already said this is not a grievance. So is it given advisory authority? You've come and asked them for, for advice here. It's an advisory opinion. It's a letter ruling. It's in sort of that tradition. Do they have authority to do that? And where's the, and where's the authority for their authority to do that? The authority is under Article 25, which is the authority to be the only intermediary or administrative body for this agreement. And we do rely – The adjudicative body just says intermediary or administrative body. Correct. And there is a question about what those words might mean. And we do rely on Bork's affidavit because it's the only thing in the record. I point out – Was there submission to the policy committee from the other side on this question before they came out with this letter? Not to my knowledge, Your Honor. Were they ever invited to make a submission? Not to, not, not to my knowledge. They are a third-party beneficiary to the agreement. They're not a party to the agreement, of course. Was the union ever invited to participate on the other side of this question? The union is part of the policy committee. Not the local union, but the international union is – What I'm, what I'm after is the following. You made a presentation and asked for a ruling. Was there any adversary presentation to what you requested? No, Your Honor. The process – It suggests to me that the committee is not setting this up as an adjudicative process. The – Your Honor, the process as laid out in Mr. Bork's affidavit is that when these matters are raised to the policy committee, and apparent – if this isn't the first time the policy committee has acted in this respect, then there are various committees that are equally composed of labor and management that discuss and, and, and decide what the meaning of the contract is. Nevertheless, you presented it to the policy committee, and the dispute is really with the local. It's not with the international, right? The, the, the, the, you know, the dispute involves CBA, which, which, the agreement with the local, right? The dispute – Over the, over the allocation of these, of it. If I'm understanding your question, Judge Kaczynski, the dispute is about the meaning of the national agreement, because one part of the national agreement says that employers like Babcock have to pay funds called for by the local agreement, and another part of the national agreement, paragraph 36, says that they have the discretion not to pay into industry funds, and, and that's the tension that we're exploring. Well, you would like to have the dispute be, but if that's all there was, you would just win, and that would be it, but there is a local agreement, which is incorporated into the CBA. Correct, and the key point is that it's incorporated. The dispute is about how this local agreement, which is part of the major, main contract, interacts with this provision, which you want to be the governing provision, right? That's not exactly right. I don't, I think it is the governing provision, because the local rights – Well, I, I realize that, I realize that's your position. Because Babcock signs on to the national agreement. It only is subject to the local agreement to the extent that the terms of the local agreement are expressly incorporated into the national agreement. So, these terms, the payment into the apprentice fund, are, are incorporated via paragraph 34 into the national agreement, but it's still the national agreement that we're talking about. Your dispute is about how the, the national agreement interacts with, with the local agreement. Correct. And your dispute, the people on the other side of this controversy, is the local, the local union. Well, it's the – Am I wrong about that? It's the fund of the local union. I mean, there's a union and then there's a trust fund. If you want to waste your time in saying words, that's fine. It's not the, it's not the national people. It is the local people that you have a dispute with. Correct. Okay? Now, it's taken us two minutes of your time to get to this point. There's a question I had is, were these people invited to make their, give their side to the, to the, to the board? No, Your Honor. The fund is a – How, how much difference should we give to a process that really does not allow or does not give a chance to the other side of this dispute to give their view? Well, let me try to answer that this way. The international union – How about just a straightforward answer? The, the international union was part of the process. And so it's not just a management committee – In other words, you want to answer the question you wish I'd asked and not the question I did ask. You can go ahead and do that. But leaving my question unanswered will not help you any. The – How much difference do we give to a process that only allows one side to the dispute to present its side? I mean, let's say, in fact, the contract does unambiguously provide authority for this body to, to adjudicate a dispute. I don't think it does. I think you're probably wrong on that. But let's assume that it did do that. We still have to decide what difference of any to give to them. So my question is really one of administrative law. We've got a process. As it turns out, the very question, the item that, that, that, that is now before us was presented by one side. Other side wasn't given a chance to make its case. Now, do we defer to that kind of process? Should we defer? If we defer at all, should we give it the full deference to, to, to a, to a, to a, to a more even-handed process? I think the answer to your question probably depends on who the other side is. Here, the fund is a third-party beneficiary of the national agreement. All its rights derive from the national agreement. It only has, it only gets the 75 cents because of the national agreement. But what rights it has, it didn't get a chance to assert. So it has this agreement. It's being interpreted by this body that you want us to say, you know, close your eyes and accept what they say. But they don't get to address that body and give their view as to how that agreement, of which they are a third-party beneficiary, ought to be interpreted. Now, I don't know. I, you know, so the way sort of things work in my mind, this strikes me as a kind of process you'd be less likely to defer to, certainly less likely to defer to blindly. Well, their rights are different as a third-party beneficiary. And I think that's a key to the answer of your question. Sounds as though your answer is dependent upon a premise that says a third-party beneficiary is not entitled to enforce contractual rights. But that's demonstrably wrong. They are entitled to enforce whatever contractual rights they have. And the issue is, do these third-party beneficiaries have this right? And so merely saying they're a third-party beneficiary, therefore the administrative body didn't need to listen to them, isn't much of an answer. But they're bound by the key to the third-party beneficiary argument is that they're bound by the terms of the agreement. They're not negotiating the agreement. Of course that's right. They are bound by whatever this agreement is, just as you are. But you're saying because they're a third-party beneficiary, they shouldn't be allowed to participate in an adjudication as to what that contract means. If the terms of the agreement, if I'm right that the terms of the agreement give the policy committee the interpretative authority, and let me emphasize that a key point in Bork's affidavit is that he says that the issuance of a formal bulletin is even more formal than when the policy committee sits with its grievance hat on. But if I'm right that the policy, that the parties to the national agreement anointed the policy committee as the sole interpreter of the agreement, then the fund should be bound to that interpretation as it would be bound to the terms of the agreement. I understand that. And the premise, in a way, is your premise that says if the agreement says that they're to be bound by the decision of the committee, I then look at the language which says that it's an intermediary and an administrative body, which is ambiguous at best in your favor. And as I'm trying to interpret that ambiguous language, I then look at the behavior of the parties thereunder, and they don't behave as if this were a normal adjudicative body because the party in interest, the fund, doesn't even get to participate, which leads me to believe that even if I could interpret this ambiguous language as your way, if everything else went your way, nothing else goes your way. If the – let me try it this way, Judge Fletcher, and maybe this will help address – explain the point. If the – if the policy committee had been sitting in it with its grievance hat on under Article IV – Article VI, excuse me, Step 4 of Article VI, it can adjudicate grievances and those are binding. And I assume in that process, in the grievance process, you've got the normal adversary presentation by two sides? The fund would not be at the table in that grievance process. Of course, the fund isn't a third-party beneficiary to a grievance process. But if the – if the dispute had been resolved through the grievance process and this had been an – the adjudicative part of the policy committee's role and power under this agreement and authority, then the fund would be bound to that determination. So why should it be any different? Let me ask you this. In the grievance process before the committee, are there two sides that present the question? There are the same two sides as the side – yes. There's the international union and the employer, which are the same two sides that went before the policy – that are part of the policy committee. In other words, if you do have a grievance process, you have what we're accustomed to in an adjudicative process, that is, say, you have a presentation that's adversary between two parties? That's correct. But it's important to note that the policy committee, when it sits as an interpreter of the agreement under Article 25, it also has both sides represented. So in one role – Represented in the sense that they're on the committee. Correct. That's correct. Let's see if we buy off on this idea that this is a policy body and so it can sort of interpret the contract – or it might be able to sort of interpret the contract not in the context of a particular dispute, but as a matter of administration. How do we decide that question? I mean, we have statements from the secretary. Secretary is who says one thing. But, you know, that's a question of – what is it, a question of law? Is it a question of fact? Is this the kind of thing that we need to have an adversary determination on or hearing about? I mean, there may be different views as a function of – does NLRB get – should they get to say how these things are normally handled or what are the powers of such committees and other contracts? How do we decide this question? On the record before the court, we have the affidavit of the secretary explaining how the policy committee works and how it works in this case leading up to the issuance of a formal bulletin. I'm not quite sure – Why does the secretary have authority to tell us that? And why is that binding? I mean, is there a – it strikes me as a little thin to give the secretary's view. Was he authorized by the board? By the – Well, the policy committee is the representative of the parties to the agreement. And he's speaking for the policy committee. So he's speaking as the parties to the agreement. I'm – Was his letter or his affidavit authorized by the committee itself? I don't know. I don't know, Judge Kuczynski. And I'm also watching the clock where the light has turned to red. So I'm asking a question. I don't know if he was authorized by the party. He speaks for the party. I mean, the policy committee is a creation of the parties. We know that he speaks for the committee. I mean, he is the secretary. I don't know whether the secretary can speak for a body. I mean, the secretary can take minutes, presumably. And if there's a resolution from the body, the secretary can certify that, you know, this is the resolution that appears in the minutes. That he can do. But in a sense, he's sort of a minor functionary. He's not the committee itself. Is there a resolution? Is there – is he – is something authorizing him to speak on behalf of the committee itself? His affidavit at – which is at – in the record at page 41, Your Honor, says that he has the authority to execute this affidavit. So that's what we know from this record, that he – How do we know that he, in fact, does have it? Just because he says it assumes a little bit of bootstrapping, doesn't it? I mean – Certainly, there's nothing in the record that would suggest – Well, he also calls himself impartial. I'm the impartial secretary. Is an impartial secretary, too? That's what he says. There's nothing in the record to suggest that he doesn't have this authority. And I don't understand that to be the fund's argument.  It's argument more goes towards what we were talking about a few minutes ago, is why should it be bound to the policy committee's determination? So your position is it's undisputed that what the secretary says speaks for the committee? You think that that is not a matter of dispute? I don't – correct. I don't know of anything in the record that challenges the authority of this secretary to speak for the committee or challenges anything that he says in this affidavit. I don't think that's where the lines are being drawn and the battles being fought here. I think it's about whether – what deference should be paid to the policy committee's determination. The district court thought that because it wasn't a grievance, then the policy committee's determination really should be given no weight. But the policy committee has both the authority to adjudicate grievances, clearly, but it also has this other broader authority that Bork says is even more formal than when it sits in its grievance capacity. But even if we take your argument as to the authority of the committee in its strongest form, that is to say, it has the authority to give binding interpretations of the national agreement and, I guess, the interaction of the national agreement with local collective bargaining agreements, the only thing they say is it's against the spirit. But that's – I mean, the way that this court – Any trained lawyer faced with something that says this is against the spirit and the intent, when the question is what's the enforceability, says, well, oh, if it's just against the spirit of the intent, I guess they didn't think that the language compelled it. This is Judge Biden's point. Taking the assumption that this committee has this authority, taking the point from there, then when the committee makes its determination and says that the employers don't have to pay the additional funds under the terms of the national agreement, when that determination then – when that dispute is then brought to a court, the results of a grievance process, does it draw its essence from the agreement? Is it a plausible interpretation of the agreement? Here's the committee – Your stronger argument, if we're talking real administrative law, and this is only kind of administrative law, might be to Chevron, that is to say, you know, construe the statute, construe the agreement, they're maybe an authoritative body to construe it rather than an adjudicative analogy. Well, that's certainly another way to look at it. And then in that situation, too, the district court would defer to the agency's, in this case the policy committee's, determination. Then it would be an arbitrary and capricious standard. I mean – Yeah, but even then we're still stuck with the problem. The only thing they said was spirit and intent rather than language of the agreement. Correct. But if it is – if it is – if it has the authority to interpret the agreement, then it can take the words of the agreement and say to interpret it that way would be contrary to the spirit and intent of that provision of the agreement. I mean, there's considerable leeway there if in fact it has the authority as we believe it does. It is contrary to the spirit and intent, but it is consistent with the language. What do we do with that? Your Honor, first of all, I don't think it's consistent with the language. And second of all, if the policy committee, given its broad authority to interpret this agreement, if it thinks that it's against the spirit and intent, then the court should defer to that decision just as it would defer to any other decision of this committee. You could defer all day. You could say, yes, this is against the spirit and intent, but the language controls and the language goes out of the way. I mean, what does that buy you? Because the policy committee, as long as it's a plausible reading of the language, and I don't think there's an argument that it's implausible. But there's no reading of the language. That's one of the things that's so frustrating about reading Mr. Bork's bulletin is that there isn't any interpretation here. It's simply a declaration. And it's only a declaration, but it's contrary to the spirit and intent of the agreement. There's not a single provision cited in that provision. I don't know. Is Mr. Bork an attorney? I don't know, Your Honor. Do we have any lawyers there? I mean, if they're trying to speak to us, they're not speaking the language of interpretation of a contract. There isn't anything in here that recites the language, that attempts to make sense of the entire agreement, to tell us what the dual rate is, why that is violative of the spirit and intent. And there's the lawyers staying here on the side. This was obviously drafted by a law firm, Gianelli and Force. If you look on the side of the page. I think that that was the law firm for the defendant and the other defendant in the consolidated case below. He just kind of borrows their stationery? I'm sorry? He just kind of borrows their stationery? I don't know how. It was a different party, and I don't know how that came to be. Sounds like he is really a neutral. Okay. Well, this was a pleading filed in the Superior Court by Gianelli and Force. And so the affidavit is part of this court document. So probably all the language in here was drafted by lawyers, and Mr. Bork just signed it, right? He didn't sort of make it up. I couldn't answer that question. I don't know. It wasn't even my party, so I couldn't tell you how this affidavit came to be, except to say it's not disputed. Nothing that he has said in here is the hot ticket item for the fund in this appeal, as I understand their argument. In terms of, Judge Bybee, your concern about that the policy committee wasn't interpreting the language, when it talks about a dual rate, what I understand that to mean is that the national agreement is there to standardize practices among employers who do work on a national Does dual rate mean the word double counting? Is that what dual rate means? What it means is that some employers would pay 75 cents into the apprentice fund, and others employers would pay a dollar into the apprentice fund. Right. Depending on whether they If they weren't making some other payments. Correct. But we're talking about the payments into the apprentice fund. There would be two different rates. And given that the whole purpose of the national agreement is to standardize practices for national employers like Babcock Why doesn't Article 9 standardize the practice? Article 9 says you do whatever you've agreed to do locally. And that would be a standard practice, wouldn't it? Even if it results in different rates. Article 9 doesn't say you do whatever you do locally. It says you pay into the funds called for by the local agreement. Right. And so the fund called for by the local agreement is the 75 cents into the apprentice training fund. Just on the first level. Right. Paragraph 36 says, and you don't have to pay into industry funds, national employer. And they don't. They can choose not to. And when they choose not to, they get penalized by having to pay more into the apprentice funds. Something says you won't get penalized for doing it. It just means you don't have to do it. Now, you can look at it this way, which is to say there's an obligation to pay 25 cents into the fund. Now, if that were the only obligation, I'm not sure your argument's there at all. And what happens if the obligation is softened a little bit by saying, well, you don't have to pay the 25 cents if you pay into the industry fund? So softening it all of a sudden makes it unenforceable? The question here, I mean, where I started was that reasonable minds can differ about how to read these sections together. I grant that. I grant that there's another reading, which is why we emphasize so much the role of the policy committee. Is the policy committee's reading an implausible reading? Is it implausible to say this is a dual rate, it's against the spirit of the national agreement, which is supposed to standardize rates? It's not implausible. It's not implausible to say that the exercise of discretion that comes at such a cost with a penalty is essentially eviscerating Paragraph 36 and the opportunity to exercise the discretion. But the key point is that the committee that has been given the authority to administer and to interpret this agreement has spoken. And the fund, as a third-party beneficiary to the agreement, is bound by that just as surely as it would be if there had been a formal adjudicative process. If the Court has no further questions. Thank you. We'll give him another slide. May it please the Court, William Flynn for plaintiff's, plaintiff, I guess. In the district court, the court noted that extrinsic evidence can't be useful to interpret. Can you speak up a little bit? I'm sorry, Your Honor. The district court noted that extrinsic evidence may be useful in interpreting ambiguous provisions, but not helpful in interpreting unambiguous provisions, and certainly not to add provisions to an agreement. There is no ambiguity in the phrase apprentice training fund. If it's an apprentice training fund for $0.75, it's one for $1. That is the phrase that is relied on by my client. I'd like to turn to Article 9, Paragraph 36. This says industry advancement or promotion funds called for in a local labor agreement may be paid at the discretion of the employer. Am I correct that the contention about this additional $0.25 is that some employers would pay that as an industry advancement or a promotion fund, but that the local agreement says if you're not going to pay that at your discretion, as you're permitted to under this Paragraph 36, then you are going to pay an additional $0.25 into the apprentice fund? Correct. Okay. So it doesn't really turn out to be at your discretion. It's not discretionary in the sense that we might think that you get to pay it or not. You get to determine whether you pay it or not pay it. You're going to pay the additional $0.25. What's at your discretion now is that you can either pay it into the industry advancement or promotion fund, or you may pay it into the apprentice fund, but you're going to pay it. Correct. You're going to pay $0.25, meaning the it. You're not necessarily going to pay into the industry fund. You're going to pay $0.25. Yes. There are two reasons really why local employers would want payment to the industry advancement fund. One is to help the industry advancement fund, whatever it is, and they can't do that in this case. The other reason is that they want to make sure that all the contractors have the same rate when they make bids. Therefore, they said, well, put it in the apprenticeship fund, and that way when Babcock and Wilcox comes in, they don't get a $0.25 advantage over the local employers. That's why they did it, probably. So your reading then of the question of discretion of the employer is that no self-respecting local is going to let an employer decide whether to pay an additional $0.25 or not, or pay zero. In other words, an employer doesn't get to decide, well, I think I'll just take a pass on paying an additional $0.25 an hour if that's okay with you. The only discretion they have is which fund does it go to. Correct. Is that a standard practice in local agreements, do you know? I have no idea. I have no idea. This is what this agreement provides. I wouldn't be surprised if it appears in other agreements also. I'm wondering why, I mean, I suppose that you probably have standing, but what occurs to me is that, you know, you could go through this process, you could win, and then they could say, you're not going to get a cent because we're going to put the money into the other agreement. Why is this a hypothetical case? Because you don't, there's no way you will actually necessarily recover anything. Okay, I don't understand your question. If we prevail in this appeal, we get whatever the judgment calls for. And you'll be getting passed. Right. Passed, okay. And yes, they can choose to pay into the industry advancement fund if they wish, or they can, the parties to the contract can change it and prohibit dual rates if they wish. But they haven't done that. Can they retroactively take whatever the accrued $0.25 funds are and give those to the industry fund instead of to the pension fund? I don't think so. I don't think so. There's nothing in any agreement that says they're allowed to do that. The apprenticeship fund is entitled to the money. They're allowed to do it prospectively. Why can't they do it retroactively? Because they chose not to. I mean, had they paid the industry advancement fund, then I suppose they could, the apprenticeship fund would only be owed $0.75, but they didn't. And, you know. What if they go back and pay it now? If they lose and say, well, okay, we now know that we need to pay the money to somebody and we choose to pay it to the other side, to the other fund. Well, I suppose that would be an interesting case, but it's not this case. You know it's not this case. Because we have a judgment for the amount. And we're going to enforce that judgment. We would have a fiduciary obligation to enforce that judgment. And I guess then your argument is, we have a judgment for that amount, and they have not made the argument that, well, if it's a judgment against us, we can pay it to somebody else. So that question is not in front of us. Is that the argument? Correct. You might have others too, but you have that argument? Yes, I guess so. I just want to comment briefly on some of the things that were raised by Babcock and Wilcox. First of all, we don't agree that this policy committee is the administrative agency, or it is akin to an administrative agency. It gets to decide whatever it wants. It has very specific duties listed in the contract. In Article 8, for example, as pointed out in their brief, it has the right to modify wages. It doesn't, in Article 9, have the right to modify fringe benefits. The fact that it has some authority in some areas doesn't mean it has authority in all areas. What do you make of the Secretary, Secretary David, which tells us of the things that the powers of the committee has? Well, I think it's very interesting, but it's not proof that, in fact, the agreement says that they have those things, that they have that authority. He says they met, and they talked about TCB's application, and this is what they gave an opinion on. And there were 28 members, of which one was a representative of the international union. And we don't even know how he voted. I mean, maybe it was 27 to 1. We don't even know whether he was, you know, whether any evidence was presented or anything. Why? Why? But you are answering a different question. You're answering the question of what do we make about their resolution of this matter. But he also talks about the powers and authority of the committee. What do we make of that? Why isn't that proof, which is uncontested because you didn't put in proof on the other side, that this is, in fact, that this committee, in fact, has very broad powers, much broader than it would seem from a straightforward reading of the agreement, and we shouldn't interfere with that. It's a big contract. It involves many parties all over the country. It involves interaction of many agreements, local agreements with national agreement. And they say this is the power we have, and we don't have anything else to suggest they don't have this power. Well, you have the agreement itself. First of all, they are not the parties to the agreement. This committee is not the parties to the agreement. They didn't make the agreement. They have some ---- They are a body that is constructed from this agreement. They are a body that's created. It's like a trust that sort of creates an administrative trust agreement and maybe creates an administrative body for the trust. So I would think that if they assert authority, and maybe the Secretary's affidavit is not the right way to do it, and say, you know, we are a body created by the agreement, we assert this authority, that would be pretty persuasive. Well, I think they have to point to particular ---- I think the agreement itself has to say, yes, they have authority in this area. They do have authority to file grievances, to adjudicate grievances, and this is not a grievance. The defendant made a motion to supplement the record and attached a letter from the NMAPC to them saying that if you want a more formal approach, go through the grievance procedure. That's what it says. They didn't do that. So was the fund aware that the committee had this question before them? Not that I know of. You know whether anybody else was aware of this? Anybody else on the labor side was aware of this? I have no idea. Well, there must have been, because there is labor representatives in the committee itself. Apparently. According to Mr. Bork. You have any knowledge of this? No, we weren't invited. We didn't know anything about it. And you don't know what this body, who this body is composed of or what? Well, I assume that the affidavit is accurate in that sense. It says 14 international unions have representatives and 14 employers. I assume that's fair. You don't dispute that. You don't have anything in the record? No, I don't dispute that. Essentially. Sounds to me like at least it's a body that was made up of a fair cross-section, both employers and unions were represented. They do seem to have authority in the agreement to do quite a bit. Why shouldn't we just say, look, it's a big agreement. It has set up a mechanism for administering itself. And this is exactly the kind of thing that one would expect it to do. This dispute arises about a provision in the interaction between a local agreement and a national agreement. It's a policy question that we want to make sure is resolved the same way nationally, rather than going to court in different parts of the country and getting different answers and then having different parts of the agreement resolved in inconsistent ways. So as a matter of policy, we will adopt the view that on this kind of issue, the national agreement comes and this will apply to this local. And because we're a policy committee, this will apply to every local around the country. Everybody who's similarly situated will be dealt with exactly the same way. Seems like a perfectly plausible thing for us to defer to. Well, it would be true if they, in fact, if that had happened, if they had said, you know, you are given the authority to interpret this agreement or add new clauses, add a dual rates provision. But they weren't given that provision. They weren't given that authority. And had the parties to the agreement decided, well, we'd like to change the agreement. They can do that also. What he says here, the committee has exclusive authority to administer and interpret the national agreement. This paragraph seven. That's pretty broad. Yes, it is. Authority to administer and interpret the national maintenance agreement. This is a page 43 of the records, page three of Mr. Brooks affidavit line six and seven. Yes, he says that, but there's no contractual support for that. You don't dispute it. Well, I disputed that the that the agreement doesn't. You don't have any. You said I would dispute it earlier. You certainly didn't present any evidence to the contrary. You didn't present somebody coming and saying, no, it doesn't have this. Well, the evidence to the contrary is the agreement. The agreement doesn't give them that authority. If the agreement says if it had a clause saying the exclusive authority to administer and interpret the national maintenance agreement is established in the committee and the committee and here's the process you use to get interpretation, then that would be true. But it's not true. Well, what what what do you make of this language about? The only this is now reading from the same paragraph lines eight through nine or 10 here. The only intermediary or administrative body for this agreement is the National Maintenance Agreement Policy Committee. There are visions of the agreement made by a majority vote. What does it mean intermediary or administrative body? Well, I think it means that no no other body, no local body or anything is going to bind this agreement. By the way, I just noticed that the last sentence there isn't in the agreement itself. Take a look. Compare what he says. The revisions of this agreement shall be made only by a majority vote. Yes, you have another problem there, too. The article that he's quoted is Article 27, Section 2, which does not appear in the copy of the articles that we have. It stops with Article 26. So I don't know where Article 27 comes from. Look at page 22 of the record. That's where Article 25 is. On page 23, Article 26 is the duration of the agreement. And that language that's quoted in his affidavit on page 43, neither that nor the section that he cites appears in the agreements we've got. So maybe it's some I don't know if it's someplace else in the record, but not at least not at pages 22 and 23. Well, it's not in the record because the parties have stipulated what the National Maintenance Agreement is. And he can say it's different, but he doesn't present proof of that. Just him saying so doesn't make it so. If you look at excerpts of record 68, it doesn't appear there. And the parties have stipulated. I'm sorry, what was that page reference again? 68. I'm sorry, that's the. So you're doing the same thing that I had earlier on page 23. Yeah, yeah. And that is the same. That is the same agreement that appears on pages 22 and 23 of the record as well. So absent that clause, all of a sudden I'm figuring something out based on Judge Bybee's question and your response. Under the agreement that apparently is the stipulated agreement between the parties here, the clause that gives to the committee this sole intermediary and administrative power is gone. It doesn't exist. No, the first sentence does exist. The sentence that Judge Kuczynski quoted does exist. Where does that exist? Well, on page 22 and also, I guess it's repeated on 68. The agreement is between the employer and the international union only. The only intermediary administrative body for this agreement is. I see. I'm with you. But in his affidavit, he adds something. Revisions of this agreement shall be made only by majority vote of the committee. And he's quoting an article 27 that doesn't exist. So he's obviously working off a different draft. Yeah. Perhaps. I got it. Well, essentially, Babcock and Wilcox is asking you to defer to this committee as if it was an arbitration award, this decision. An arbitration award would be affirmed if it draws its essence from the agreement. I don't think that's quite what they're saying. I think what they're saying is this is a, in fact, they're probably asking us to do more than defer to the arbitration award. They're saying this is a body set up by the agreement to administer the contract. They have broad policy powers to resolve ambiguities in the contract and also inconsistencies. And because it's a contract that involves many subsidiary contracts that are incorporated into it at a local level, it has fairly broad powers to say how these things are to be administered so they be consistent. This is in paragraph 9 of Mr. Bork's affidavit. This is now waiting for page 3 of his affidavit, starting page 20 or 21. It is responsible for reviewing activities, coordinating programs, and handling administrative matters to assure uniform application of the areas of wage modification, working conditions, and extension requests. I'm sorry, where were you reading from? I was reading from Mr. Bork's affidavit, page 43 of it. It's a record, paragraph 9, starting on line 21. Essentially, it asserts the powers of an administrative agency that is administering a statute. This is where I just pressed a reference to Chevron. It seems apt to say we have the same kind of authority in interpreting sort of this multitude of interlocking agreements that you would have if you were – that an administrative agency has in interpreting a series of interlocking statutes that Congress has passed. And we untitled deference. This is a complex matter. Uniformity is important. We are dealing – you know, we have representatives from both sides, so we can see both sides of the issue. We have these committees. We have this complex structure. We can think about the implications of an interpretation, not just on the particular dispute in one case, but also how it affects the administration of the entire contract. And so we are asserting authority to interpret this in an administrative fashion, not in an adjudicative context, but as an administrative – adopted administrative – essentially issue regulations or letter rulings dealing with how the contract ought to be interpreted. It seems a perfectly plausible thing to have in a contract. Well, it would be if it was there. But the other thing is that even if it was an administrative agency, you can't let them add words to a statute that's not there. There is no reference to dual rates in this agreement. The phrase apprenticeship training fund, what interpretation could a reasonable administrator make? It's an apprentice training fund. And my time is up. Thank you very much. Yeah. No, let me ask another question before you sit down. I think I know the answer, but it's just nagging at me a little bit. Now that I've figured out that Mr. Bork is asserting the authority of the policy committee based upon a different national maintenance agreement. So he's quoting from an article that doesn't exist in the national maintenance agreement that's apparently the agreement that's in front of us. Now he's quoting a sentence that parallel or that's identical to a sentence that's in here. He is also quoting a sentence that doesn't seem to be in here at all. To what degree am I supposed to defer to his statement, the committee has exclusive authority to administer and interpret the national maintenance agreement, when it's clear that he's working off a different agreement that I do not have in front of us and that the parties have by stipulation not put in front of us? Well, I think you can't just say I have exclusive authority to interpret unless the agreement says that. And the agreement says they have certain authority and certain authority they don't have. It gives them authority in certain areas. And you can't imply that they have authority in other areas. Well, the thrust of my question, I guess I'm afraid, may cut not against you, but against the other side. Obviously, the sentence that supports him the most is the sentence that exists in both agreements. But maybe he's relying on something else in addition. I mean, how much should I defer to his interpretation of an agreement when it's obvious that to some degree he's looking at a different agreement than the one that we have in front of us? Well, he's asserting things that are not in the agreement. So I don't know. I don't know how expert he can be. Thank you. Well, you used your time. We'll give you two minutes for rebuttal. Thank you. Ms. Winkleman, can you start with telling us why he's referring to a provision that's not in the agreements we have? That's just where I wanted to start to address Judge Fletcher's concern. In paragraph 2 of Mr. Bork's affidavit, which is at page 42 of the record, he explains that there are 14 of these different national agreements. And then at lines 5 and 6, he says, with only a few minor differences, the language of each national maintenance agreement is identical. So it's absolutely correct that he is looking at a different iteration, a different version of the national agreement. And we know that just because ours is Article 25, and he's looking at Article 27. But the key language that we rely on is in both, and that's the only intermediary or interpreter. That's the key language you rely on, but it's not the key language that – it's not the totality of the key language he relies on. He quotes, in support of his statement that the committee has the exclusive authority to administer and interpret the agreement, he quotes the sentence that is common to the agreement that we have and the one that he apparently has in front of him, but he also quotes the sentence, Revisions to this agreement shall be made only by majority vote of the National Maintenance Agreement Policy Committee, Inc. Now, revision is an odd word here. Maybe what he's trying to do when he says, you know, contrary to the spirit and intent, he's trying by his ruling actually to give us a revision of the language of that committee, of that agreement. Well, there's nothing in the agreement that's in front of us that gives to the committee the power to revise. And maybe when he says we have exclusive authority to interpret, he's thinking that revise is the same thing as interpret. Well, that revise language is not in front of us. That's absolutely correct, Judge Fletcher, but the way that I put this together, and I also had noticed that there was a difference here. You guys are ahead of me. I hadn't quite figured this out. Well, I didn't notice it all that long ago. Certainly not when we were briefing it. But the way that I put it together is that he's talking about administer and interpret. If he was trying to key off of the last sentence, I think he would have said administer, interpret, and revise. I think he didn't. On the other hand, if revise was irrelevant, he needn't and shouldn't have quoted that last sentence. Perhaps he was quoting the entirety of Section 2 of that iteration of the agreement. The entirety, you know, you can quote the entirety of the NIMA, of the National Maintenance Agreement. But you don't. You tend to quote only the things that you think support you. So what in the world is that second sentence doing in here if he didn't think it supported him? Well, it may have been the whole section is what I'm saying. But the key language, I think, is the only intermediary or administrative body and what those words mean. And we're not talking about a revision to the agreement. I mean, if the agreement had been revised, I think I heard the fund accept that it would be bound by it. If there had been a grievance, I think I heard the fund say it accepted it would be bound by it. The question is when the policy committee is interpreting the national agreement as the intermediary or administrative body, not as the reviser, not as the grievance adjudicator. We're very familiar with forms of revision that are sort of common law constructions of language that depart a little bit from what might at first blush seem to be the language. How do I know that he doesn't mean revision in that sense? Well, he's talking about majority vote. I mean, that's a formal kind of revision. But I assume that there was a majority vote that led to his, as it were, ruling. Isn't that right? On this particular point. His declaration doesn't talk about the agreement being revised through some kind of majority vote. But let me come back to the vote. The letter he writes that says here's what the letter and spirit of this is, that was pursuant to a vote or not? I believe that the record is silent on that. Let me say what we know. We know from his affidavit that this went to the Wage Analysis Subcommittee. It doesn't say. It went through three different subcommittees of the Policy Committee. And at the end of the day, the last subcommittee, the Agreement Analysis Subcommittee, recommended that the committee adopt a formal bulletin. And he says at the bottom of page 45 of the record, lines 27, 28, and continuing over, that the bulletins are formal announcement of policy committees and interpretations which are made available to all employer and union participants. And then they drafted the bulletin. There's nothing about. This gets us to the question. So I started out asking, what exactly is he doing here? Is he just sort of an observer? Is he somebody who was there? And saw this process at work, so he's just a little witness? Or is he somehow speaking for the committee itself? Is he sort of saying, here's, you know, what I'm saying. I am speaking on behalf of the committee. I just have, you know, the committee can't speak without a bunch of people.  And it's not clear at all what it is he's doing. You know, there's also the problem that this piece of paper was not prepared. It was prepared in a different case for a different purpose, I gather. Well, it was. It's under both captions, Your Honor. It was submitted in the consolidated case. So the Babcock caption is on the front of his affidavit. The other case. The other case settled below. The cases were consolidated, raised the same issues. And it was covered by a different version of a different agreement? It may have been. Why is Vork working off a different agreement? Since your client is obviously bound by only one of these agreements. Correct. My assumption, and I don't know this, so I can only tell you my assumption, is that the TCB industrial agreement was slightly different in one respect that is noted in his affidavit than the Babcock agreement. But again, the key language, the bulletin isn't the reflection of a revision of the agreement. As you read through the affidavit, he never says, and the committee met, and we took a majority vote, and we decided to revise this agreement. He talks about the vetting through the various subcommittees up to the final formal issuance of the bulletin, which is covered under, I mean, the key language in our view is the only intermediary or administrative body, which is common to both of the agreements. If the court has no further questions, I will sit down. Thank you. Thank you for your consideration. Case resolution, we are adjourned. May I respond briefly? The TCB case, the joint stipulation of facts is at the record at page 50, and it was the same agreement, and it's attached, and you can review it if you wish. Okay, thank you. We are adjourned. Thank you.
judges: Kozinski, W. Fletcher, Bybee